IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN LAWNICZAK, as Personal Representative of the ESTATE OF JOHN ORLANDO, Deceased, | ) ) ) ) | Civil Action No. 2:17-cv-00185 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ALLEGHENY COUNTY, *et. al*, | ) ) | HONORABLE LISA PUPO LENIHAN |
| Defendants. | ) | Electronically Filed. |

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

When a mentally ill, depressed person has attempted to kill himself multiple times, has engaged in self-harm, declares he has been thinking about killing and harming himself, and has made an actual plan of how he would carry out his own suicide, it cannot be said as a matter of law that the risk of suicide is nothing more than a "mere possibility."

*Palakovic v. Wetzel,* 854 F.3d 209, 222 (3d Cir. 2017) (internal citations omitted). **John Orlando ("Orlando") said he was going to hang himself in the Allegheny County Jail, and he did.**

II. FACTS

Plaintiff incorporates by reference the facts and responses set forth in her Counter Statement of Facts ("CSF"), filed of equal date herewith, as though the same were set forth herein at length.

III. STANDARD

Summary judgment is appropriate only if there is no genuine issue as to any material fact. *See* F.R.C.P. 56(c). The moving party carries the burden to demonstrate the absence of any

genuine issues of material fact. *Big Apple BMW, Inc. v. BMW of North America, Inc*. 974 F.2d 1358, 1362 (3d. Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). It is inappropriate for a court to resolve factual disputes and to make credibility determinations when deciding a motion for summary judgment. *Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1061 (3d Cir. 1991). Furthermore, a court must draw all inferences in favor of the non-moving party when determining whether there exists a material issue of disputed fact. *Goodman v. Mead Johnson & Co*, 534 F.2d 566 (3d Cir. 1976).

IV. ARGUMENT

Defendants argue that Plaintiff's claims against them must fail for several reasons. First, Defendants contend that the actions of the individually named Defendants do not rise to the level of deliberate indifference; these Defendants also claim that they are entitled to qualified immunity. Second, Defendant Allegheny County ("County") argues that it cannot be held liable for Mr. Orlando's suicide absent an official policy or custom that caused a constitutional violation. Finally, Defendants argue that the Plaintiff is not entitled to punitive damages.[1]

**A. Defendants Bonenberger, Haburjak, Corrado, Wainwright and Harper are liable to Plaintiff under 42 U.S.C. § 1983.**

In *Estelle v. Gamble*, 429 U.S. 97, 103-04, (1976), the Supreme Court held that the Eighth Amendment requires the government to provide medical care to incarcerated individuals and concluded that deliberate indifference to a prisoner's serious medical needs violates the prisoner's constitutional rights. "The Due Process Clause of the Fourteenth Amendment provides pre-trial detainees at least as much protection for personal security as the level

---

[1] Defendants seek summary judgment on Plaintiff's claim for punitive damages against Defendant County. (Defendants' brief, p. 17). However, Plaintiff does not purport to claim punitive damages against Defendant County, nor has she ever sought such damages against Defendant County. (*See* Plaintiff's Amended Complaint, ECF No. 19).

2

guaranteed to prisoners by the Eighth Amendment." *Palakovic, supra,* 854 F.3 at 222 citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 668 (3d Cir. 1988) ("*Colburn I*"). Therefore, the deliberate indifference standard for inadequate medical care applicable under the Eighth Amendment to incarcerated individuals also applies to pre-trial detainees.[2] *See generally Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003). The Third Circuit Court of Appeals has recognized that a "particular vulnerability to suicide" is a type of "serious medical need." *Colburn v. Upper Darby Twp.*, 946 F. 2d 1017, 1023 (3d Cir. 1991) ("*Colburn II*").

To prevail on this claim, the plaintiff must prove the following elements: (1) that the individual had a particular vulnerability to suicide; (2) that the prison official(s) knew or should have known of the individual's particular vulnerability; and (3) that the prison official(s) acted with reckless or deliberate indifference to the individual's particular vulnerability.[3] *Id*.

"In order to show a detainee had a particular vulnerability to suicide, the plaintiff must show that there was 'a strong likelihood, rather than a mere possibility, that self-inflicted harm [would] occur.'" *Wargo v. Schuylkill Cty.*, 348 F. App'x 756, 759 (3d Cir. 2009) quoting *Woloszyn v. Lawrence Cty.*, 396 F.3d 314, 320 (3d Cir. 2005).

---

[2] Plaintiff brought her claims under the Eighth Amendment of the United States Constitution and 42 U.S.C. § 1983. (*See* Plaintiff's Amended Complaint, ECF 19). However, Plaintiff's Decedent was a pretrial detainee, not a convicted inmate. Thus, Plaintiff's claims will be analyzed under the Fourteenth Amendment, pursuant to Third Circuit jurisprudence. *See generally Colburn v. Upper Darby Twp.*, 838 F.2d 663, 668 (3d Cir. 1988); *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

[3] "With respect to the use of any particular wording to distinguish between deliberate indifference and negligence standards, the Court of Appeals for the Third Circuit in *Williams* expressly declined to distinguish between 'reckless indifference,' 'deliberate indifference,' 'gross negligence,' or 'reckless disregard' in the context of Fourteenth Amendment violations and indicated that these terms refer to the state of mind required for a claim of deliberate indifference to a serious medical need." *Estate of Kempf v. Washington Cty.,* 2018 U.S. Dist. LEXIS 155254, *48 (W.D. Pa. 2018) citing *Williams v. Borough of West Chester*, 891 F.2d 458, 464 n. 10 (3d Cir. 1989).

> [T]he detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death. Moreover, the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.

*Colburn II*, *supra*, 946 F.2d at 1023. Furthermore, "[a] particular individual's vulnerability to suicide must be assessed based on the totality of the facts presented." *Palakovic*, *supra*, 854 F.3d at 230.

The plaintiff must then show that the custodial officials "knew or should have known" of the "strong likelihood" of suicide. *Colburn II*, *supra*, 946 F.2d at 1024. The "should have known" element "does not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk of suicide presented by a particular detainee, though something less than subjective appreciation of that risk." *Id*. at 1025. This element may be met through a showing of the custodial officials' "actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." *Id*. at n. 4.

Lastly, "[d]eliberate indifference requires that prison officials know of an excessive risk to an inmate's health or safety and affirmatively disregard that risk." *Innis v. Wilson*, 334 F. App'x 454, 456 (3d Cir. 2009) citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Colburn I*, *supra*, 838 F. 2d at 669 ("[I]f such officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability.") Thus, the plaintiff may prevail if the facts establish a level of "culpability higher than a negligent failure to protect from self-inflicted harm." *Colburn II*, *supra*, 946 F.2d at 1024.

4

### 1. Defendants Bonenberger, Haburjak and Corrado were Deliberately Indifferent to Mr. Orlando's Particular Vulnerability to Suicide.

Defendants argue that the actions of Defendants Bonenberger, Haburjak and Corrado did not "rise to the level of deliberate indifference." (Defendants' brief, pp. 8-9, 10-11). However, as described more fully hereinbelow, Defendants Bonenberger, Haburjak and Corrado had actual knowledge of Mr. Orlando's particular vulnerability to suicide and were deliberately indifferent to that vulnerability.

Here, Mr. Orlando's intent to hang himself was disclosed directly to corrections officer Defendant Bonenberger by members of the Millvale Police Department immediately upon Mr. Orlando's arrival to Allegheny County Jail ("ACJ") on March 24, 2016. (Plaintiff's Counter Statement of Facts "CSF", para. 73). At the time of his arrival, Mr. Orlando was extremely agitated and emotionally distraught. (*Id*. at para 74). He was also under the influence of, and experiencing withdrawal from several drugs, which increases an inmate's risk of suicide. (*Id*. at paras. 78, 86, 86, 95, 109). During the initial intake process, Mr. Orlando continued to threaten to harm himself and/or others. (*Id*. at para. 74). These threats included, but were not limited to, Mr. Orlando stating that he "just wanted to die" and that "he hopes he dies in here." (*Id*.) As a direct result of those threats, various corrections officers, including Defendants Bonenberger and Haburjak, confined Mr. Orlando to a chair with wrist, waist, and ankle restraints for approximately eight (8) hours. (*Id*. at paras. 74 and 82). During that time, Defendant Haburjak expressly acknowledged Mr. Orlando's need for a suicide gown. (*Id*. at para. 74). However, the Defendants failed to provide him one. (*Id*. at para. 87).

While restrained, Mr. Orlando was interviewed by Defendant Corrado. (*Id*. at para. 78). Neither Defendant Bonenberger, nor Defendant Haburjak informed Defendant Corrado of Mr. Orlando's earlier suicidal ideations prior to the interview. (*Id*. at para. 79). During the

5

interview, Mr. Orlando disclosed a history of mental health issues and past and current drug use. (*Id*. at para. 77). He also screamed that he "hopes he dies in here" and "we are all gonna die." (*Id*.) At the time of the interview, Defendant Corrado was unaware of Mr. Orlando's previous statements indicating a desire and/or plan for self-harm and/or suicide, despite their preservation in various ACJ reports, to which she had access. (*Id*. at para. 79). At the end of the interview, Defendant Corrado determined that Mr. Orlando was "a harm to himself" and "suicidal." (*Id*. at para. 80). Despite these conclusions, Defendant Corrado failed to refer Mr. Orlando to an outside facility for mental health treatment even though she had the authority to do so or to place Mr. Orlando on suicide precautions when she cleared him for admittance to ACJ, even though she had the authority to do so.[4] (*Id*. at para. 81).

By this time, Mr. Orlando was still experiencing symptoms associated with detoxification from various substances; he had told members of the Millvale Police Department that he wanted to hang himself; he had become extremely agitated, emotionally distraught and violent during the initial intake process; and he had made threatening statements in the presence of numerous ACJ employees (including the named Defendants) indicating that he wanted to harm and/or kill himself, all of which are recognized by ACJ as factors indicating the increased risk for self-harm and/or suicide. (*Id*. at para. 85). Despite presenting several acknowledged risk factors indicating that he was at an increased risk for self-harm and/or suicide, Mr. Orlando was not issued a suicide gown upon his release from the restraint chair, nor was he immediately housed in a mental health unit. (*Id*. at paras. 86, 88).

---

[4] Defendant Corrado also failed to provide Defendant Latham with vital information regarding Mr. Orlando's mental state through a shift-to-shift report. (*Id*. at para. 94).

Thus, Plaintiff has clearly set forth ample evidence such that a reasonable factfinder could conclude that the individual Defendants were deliberately indifferent to Mr. Orlando's particular vulnerability to suicide.

Defendants also contend that Defendants Bonenberger and Haburjak cannot be liable for Mr. Orlando's suicide because Mr. Orlando was under the care of ACJ's medical staff. (Defendants' brief, pp. 3-4, 8-9). Defendants cite to *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004), where the Third Circuit held that non-medical prison personnel are entitled to rely on the advice and opinions of medical personnel with respect to a prisoner's treatment and care. However, the case at bar is distinguishable from *Spruill*. Neither Defendant Bonenberger, nor Defendant Haburjak relied on the opinions or advice of ACJ's medical staff during their interactions with Mr. Orlando. In fact, Defendants Bonenberger and Haburjak both inexplicably failed to disclose their actual knowledge of Mr. Orlando's suicidal ideations to Defendant Corrado, the first member of ACJ's medical staff to encounter Mr. Orlando. (CSF, para. 79).

In the alternative, Defendants contend that Defendants Bonenberger and Haburjak are entitled to qualified immunity.[5] (Defendants' brief, pp. 8-9). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects public officials "from undue interference with their duties and from potentially disabling threats of liability." *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). Government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, … the facts alleged show the officer's conduct violated a constitutional

---

[5] Defendants do not claim qualified immunity for Defendant Corrado. (Defendants' brief, p. 8-9).

right" and "the right was clearly established" at the time of the objectionable conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Thus, "[t]he dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. This inquiry "must be undertaken in light of the specific context of the case." *Id*. at 201. Accordingly, "to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010).

It is well established law that deliberate indifference to a prisoner's serious medical needs violates the prisoner's constitutional rights. *See generally Estelle*, *supra*, 429 U.S. at 103-04. Because Plaintiff has clearly set forth ample evidence such that a reasonable factfinder could conclude that the individual Defendants were deliberately indifferent to Mr. Orlando's particular vulnerability to suicide, Defendants Bonenberger and Haburjak are not entitled to qualified immunity.

Therefore, for the forgoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment.

### 2. Defendants Wainwright Harper were Deliberately Indifferent to Mr. Orlando's Particular Vulnerability to Suicide.

Generally, a supervisor-defendant can be liable for unconstitutional acts undertaken by subordinates in one of two ways. First, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge of and acquiesced" to the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.

8

2004).  Second, liability will attach if the supervisor, "with deliberate indifference to the consequences, established, maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id*. citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). An official will be held liable on a claim for a failure to supervise when the plaintiff is able to establish the following elements:

(1) The policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation;

(2) the defendant-official was aware that the policy created an unreasonable risk;

(3) the defendant was indifferent to that risk; and

(4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014) citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).  Therefore, liability will be imposed on a defendant-supervisor when the supervisor,

> by virtue of his or her own deliberate indifference to ***known*** deficiencies in a government policy procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury ***does*** occur.  Liability in such a situation is imposed not vicariously but based on the supervisor's own misconduct, because to exhibit deliberate indifference to such a situation is a culpable mental state under the Eighth Amendment.

*Barkes*, 766 F.3d 320 (emphasis provided). Thus, prison officials may be charged with deliberate indifference if they have actual knowledge or have reason to believe that prison medical staff are failing to treat inmates' serious medical conditions.  *Id*. at 328-29 quoting *Hudson v. Palmer*, 468 U.S. 517, 526, (1984) (noting that prison administrators are "under an obligation to take reasonable measures to guarantee the safety of inmates themselves.")

9

Defendants argue that Plaintiff's claims against Defendants Wainwright and Harper must fail because she cannot establish supervisory liability. (Defendants' brief, p. 9-10, 12). However, Plaintiff easily meets her burden of proof. Defendant Wainwright admitted that ACJ did not have enough "manpower" to adequately monitor the inmates on Pod 5-F. (CSF, para. 115). He also admitted that ACJ's treatment of its mental health inmates could be qualified as "inadequate." (*Id*. at para. 117). Defendant Harper testified that he had received complaints indicating that staffing levels at ACJ were inadequate, but that he did not take any action to increase staff at ACJ. (*Id*. at para. 116). Furthermore, Defendant Harper testified that he was unaware if ACJ's intake staff are properly trained in suicide prevention, pursuant to ACJ's policies and procedures.[6] (*Id*. at para. 118). These facts, viewed in a light most favorable to the Plaintiff, clearly rise to the level of deliberate indifference as Defendants Wainwright and Harper had actual knowledge of jail-wide deficiencies in policies that had the potential to, and actually did, result in Mr. Orlando's suicide.

Defendants also argue that neither Defendant Wainwright, nor Defendant Harper can be held liable for Mr. Orlando's death because they were not personally involved in the incidents that gave rise to this lawsuit. (Defendants' brief, pp. 9:10; 12). However, *Barkes* clarified that "blanket assertions that summary judgment is warranted in these cases by mere reference to familiar cases holding that supervisors must have 'personal involvement' in the underlying tortious conduct alleged are insufficient because the kind of personal involvement necessary to support a supervisory liability claim depends on the claim asserted." *Peet v. Beard*, 2015 U.S. Dist. LEXIS 62655, *40 (M.D. Pa. 2015) citing *Barkes*, *supra*, 766 F.3d 319. This record is replete with facts that illustrate a

---

[6] ACJ's Suicide Prevention and Intervention Policy was revised on or about October 21, 2015. (Exhibit P of Plaintiff's Appendix). This revision was authorized by Warden Harper. (*Id*.)

10

culpable mental state, to wit, deliberate indifference, on the parts of both Defendant Wainwright and Defendant Harper.

In the alternative, Defendants contend that Defendants Wainwright and Harper are entitled to qualified immunity. (Defendants' brief, pp. 9-10, 12). As argued hereinbefore above at Section A (1), it is well established law that deliberate indifference to a prisoner's serious medical needs violates the prisoner's constitutional rights. *See generally Estelle*, 429 U.S. at 103-04. Because Plaintiff has clearly set forth ample evidence such that a reasonable factfinder could infer that the individual Defendants were deliberately indifferent to Mr. Orlando's particular vulnerability to suicide, Defendants Wainwright and Harper are not entitled to qualified immunity.

Therefore, for the forgoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment.

**B. Plaintiff's Municipal Liability Claim Against Defendant County is Viable.**

Municipal liability can be predicated upon a failure to train. *City of Canton v. Harris*, 489 U.S. 378 (1989). A local government entity will be liable "where a failure to train reflects a 'deliberate' or conscious' choice by a municipality." *Id*. at 389. Thus, the plaintiff must "identify a failure to provide specific training that has a causal nexus with his or her injury, and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Colburn II*, 946 F.2d at 1030. Specifically, in a prison suicide case,

> the plaintiff must (1) identify specific training not provided that could reasonably be expected to prevent the suicide that occurred, and (2) must demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives.

11

*Id.* at 1029-30.

Defendants argue that Plaintiff's failure to train claim must fail because Plaintiff did not "produc[e] any facts suggesting that the County knew of any supposed deficiencies, and/or that County personnel failed to correct any system-wide deficiencies." (Defendants' brief, pp. 14-16). Defendants' position is a gross misstatement of the facts.

Plaintiff directs this Honorable Court's attention to the following facts, as set forth hereinbefore above at Section A (2):

- Defendant Wainwright admitted that ACJ did not have enough "manpower" to adequately monitor the inmates on 5-F. (CSF, para. 115).

- Defendant Wainwright also admitted that ACJ's treatment of its mental health inmates could be qualified as "inadequate." (*Id*. at para. 117).

- Defendants Harper testified that he had received complaints indicating that staffing levels at ACJ were inadequate, but that he did not take any action to increase staff at ACJ. (*Id*. at para. 116).

- Defendant Harper testified that he was unaware if ACJ's intake staff are properly trained in suicide prevention, pursuant to ACJ's policies and procedures. (*Id*. at para. 118).

Furthermore, the record is replete with facts that clearly evidence a catastrophic breakdown across all departments and at all levels of care as a direct result of ACJ's failure to train its employees in the proper practices and procedures necessary to protect an inmate who is at risk to commit suicide.

Defendants Corrado, the nurse who cleared Mr. Orlando for admittance to ACJ, testified that she was not provided with any formal training regarding ACJ's suicide prevention and intervention policy. (CSF, para. 80). Similarly, Defendant Latham, the nurse who completed Mr. Orlando's medical survey report, testified that she was not familiar with ACJ's suicide and prevention policy; in fact, she testified that she could not

say with any degree of certainty that ACJ's suicide prevention and intervention policy even existed. (*Id*. at para. 91). Neither nurse placed Mr. Orlando on suicide precautions, despite numerous, clear signs that he was contemplating self-harm. (*Id*. at paras. 78, 80, 81, 85, 88-92, 95). Additional breaches of ACJ's suicide prevention and intervention policy include the following:

- Neither Defendant Bonenberger, nor Defendant Haburjak informed Defendant Corrado of Mr. Orlando's previous statements indicating a desire and/or plan for self-harm and/or suicide. (*Id*. at para. 79).

- Mr. Orlando was not referred to an outside source for mental health treatment prior to his admission to ACJ. (*Id*. at para. 81)

- Mr. Orlando was not examined by a mental health specialist prior to his release from the restraint chair. (*Id*. at para. 83).

- Mr. Orlando was not placed in a suicide gown upon his release from the restraint chair. (*Id*. at para. 86).

- Mr. Orlando's cell was not equipped with an observation bed, a safety blanket or a safety mattress. (*Id*. at para. 112).

- Mr. Orlando was left alone in his cell, despite being housed on a floor where all inmates were double-celled as a safety precaution. (*Id*. at paras. 110-11).

- Mr. Orlando was never placed on suicide precautions from the time he arrived at ACJ on March 24, 2016, until his suicide on March 26, 2016. (*Id*. at paras. 90, 96, 100, 108, 112).

The record evidence indisputably shows that the Defendant County, through its supervisors and employees, was deliberately indifferent to the very real risk of Mr. Orlando's suicide. Therefore, for the forgoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment.

**C. Plaintiff's Claim for Punitive Damages is Proper.**

Defendants contend that Plaintiff is not entitled to punitive damages because the "record contains no evidence that individual Defendants were indifferent to Orlando's rights."

13

(Defendants' brief, p. 17). As argued hereinbefore above, Plaintiff asserts that she has set forth sufficient record evidence from which a reasonable factfinder could conclude that the individual Defendants were deliberately indifferent to Mr. Orlando's particular vulnerability to suicide. Thus, Plaintiff's claim for punitive damages is proper. *See generally Keenan v. Philadelphia*, 983 F.2d 459, 469-70 (3d Cir. 1992).

Accordingly, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment.

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests this Honorable Court to deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
*Counsel for Plaintiff*

Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: September 26, 2018